# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

### NO. 24-10846-D

_____


UNITED STATES OF AMERICA,

Prosecution/Appellee,

versus

MEZEMR ABEBE BELAYNEH,

Defendant-Appellant.

_____

A DIRECT APPEAL OF A CRIMINAL CASE
FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
_____

BRIEF OF THE APPELLANT-DEFENDANT

ADAM M. HAMES
Georgia State Bar No. 320498
The Hames Law Firm LLC
511 East Paces Ferry Road, N.E.
Atlanta, Georgia 30305
(404)842-9577
Attorney for Mezemr Abebe Belayneh

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(a), the following people and entities have an interest in the outcome of this appeal:

Ali, Hawa  -  Victim

Baverman, Hon. Alan J.. -  United States Magistrate Judge

Belay, Shure  -  Victim

Belayneh, Mezemr Abebe  -  Appellant/Defendant

Berne, Steven. - Defense counsel at trial and sentencing

Buchanan, Ryan K. – United States Attorney for the Northern District of Georgia

Chaiken, Tal C. – Assistant United States Attorney

Hames, Adam,   -  Attorney for Defendant on Appeal

Jasperse, Patrick – Assistant United States Attorney

Perry, Jaime – Assistant United States Attorney

Mamuye, Efrem  -  Victim

McBath, Hon. J. Elizabeth  -  United States Magistrate Judge

Morris, Jessica  – Assistant United States Attorney

Nuru, Bertukan  -  Victim

Ray, II Hon. William M., -  United States District Judge

Sommerfeld, Lawrence – Assistant United States Attorney on Appeal

United States of America, Appellee


There are no publicly traded company or any corporations that have an interest in the outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument in this matter as the issue presented is a matter of statutory construction and the relevant facts related to the issue is not in dispute.  Argument will not aid the Court in its determination.  If the Court wants argument from the parties, Counsel for Appellant will participate.

<u>TABLE OF CONTENTS</u>

<u>Page</u>

<u>CERTIFICATE OF INTERESTED PERSONS</u>................................. i-ii

<u>STATEMENT REGARDING ORAL ARGUMENT</u>........................ ii

<u>TABLE OF CONTENTS</u>.................................................................. iii

<u>TABLE OF AUTHORITIES</u>........................................................... iv-v

<u>STATEMENT OF JURISDICTION</u>............................................... vi

<u>STATEMENT OF THE ISSUES</u>...................................................... 1

<u>STATEMENT OF THE CASE</u>.......................................................... 1-7

  (i) <u>Course of Proceedings</u>............................................................... 1

  (ii) <u>Statement of Facts</u>.................................................................... 2-7

  (iii) <u>Standard of Review</u>.................................................................. 7-8

<u>SUMMARY OF ARGUMENT</u>........................................................ 8

<u>ARGUMENT AND CITATIONS OF AUTHORITY</u>....................... 9-16

   I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO GRANT MR. BELAYNEH'S MOTION TO DISMISS BASED UPON THE STATUTE OF LIMITATIONS

<u>CONCLUSION</u>............................................................................... 16
<u>CERTIFICATE OF SERVICE</u>........................................................ 17
<u>CERTIFICATE OF COMPLIANCE</u> ................................................. 18

## TABLE OF AUTHORITIES

**SUPREME COURT CASES:**

*Toussie v. United States*,                                    12
397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970)

*Smith v. United States*,                                     12
568 U.S. 106, 133 S.Ct. 714, 720, 184 L.Ed.2d 570 (2013)

*\* Ratzlaf v. United States*,                                14
510 U.S.135, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994)

*Pennsylvania Dept. of Public Welfare v. Davenport*,          14
495 U. S. 552, 562 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)

*Potter v. United States*,                                    14-15
155 U. S. 438, 446 15 S.Ct. 144, 39 L.Ed. 214 (1894)

*Stogner v. California*,                                       16
539 U.S. 607, 123 S. Ct. 2446 (2003)

**CIRCUIT COURT CASES:**

*United States v. Rojas*,                                     7
718 F.3d 1317 (11th Cir. 2013);

*United States v. Torres*,                                    7
318 F.3d 1058(11th Cir.2003)

*United States v. Murrell*,                                   8
368 F.3d 1283 (11th Cir.2004)

*\* United States  v. Broughton*,                            8, 13
689 F.3d 1260 (11th Cir. 2012)

*United States v. Zuniga–Arteaga*,                            12
681 F.3d 1220 (11th Cir.2012)

*Harry v. Marchant*,                                                                    12
291 F.3d 767 (11th Cir.2002)

*United States v. Steele*,                                                              12
147 F.3d 1316 (11th Cir.1998)

*United States v. McLemore*,                                                       14
28 F.3d 1160 (11th Cir. 1994)

*United States v. Phipps*,                                                             14
81 F.3d 1056 (11th Cir. 1996)

*DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal*,              15
219 F.3d 930 (9th Cir. 2000)

*United States v. Jenkins*,                                                          15
633 F.3d 788 (9th Cir. 2011)

**DISTRICT COURT CASES:**

*United States v. Neill*,                                                               15
952 F. Supp. 2d 831 (D. D.C. 1996)

**STATUTORY PROVISIONS**:

18 U.S.C. § 1425                                                               1, 10, 11

8 U.S.C. § 1451                                                                          1

18 U.S.C. § 3292                                                                *Passim*

18 U.S.C. § 3291                                                                    9, 10


**FEDERAL RULES**

Federal Rules of Appellate Procedure, Rule 32                        18

STATEMENT OF JURISDICTION

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

A.    The United States District Court for the Northern District of Georgia has jurisdiction over the indictment filed in that district. 18 U.S.C. § 3231.

B.    This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and F.R.A.P. § 4(b).  This is an appeal from a final judgment and conviction from the U.S. District Court for the Northern District of Georgia.

## <u>STATEMENT OF THE ISSUES</u>

I.    THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING
      TO GRANT MR. BELAYNEH'S MOTION TO DISMISS BASED
      UPON THE STATUTE OF LIMITATIONS

## <u>STATEMENT OF THE CASE</u>

(i)    <u>Course of Proceedings</u>:

On May 26, 2021, Mezemr Abebe Belayneh was indicted by the grand jury in the Northern District of Georgia for two counts of unlawful procurement of citizenship or naturalization in violations of 18 U.S.C. § 1425(a) and (b). (Doc. # 1). Mr., Belayneh was tried before a jury presided over by the Honorable William M. Ray II from July 17 – 26, 2023. (Doc. # 123-129). The jury returned a guilty verdict on both counts of the indictment. (Doc. # 94). On February 29, 2024, the district court sentenced Mr. Belayneh to 36 months in prison with three years of supervised release to follow. That same day the district court entered an order revoking the citizenship of Mr. Belayneh pursuant to 8 U.S.C. § 1451 (e) and (f). (Doc. # 108). The judgment was entered on March 7, 2024. (Doc. # 109). On March 19, 2024, Mr. Belayneh through counsel timely filed a notice of appeal to this Court. (Doc. # 112).

Mezemr Abebe Belayneh is currently in custody at FCI Oakdale II. This appeal follows.

(ii)    <u>Statement of Facts</u>:

On one hand this is a simple case about material omissions on Mr. Belayneh's application to become a United States citizen. The omissions involved Mr. Belayneh's involvement in a dark time in Ethiopia's history known as the Red Terror.

Every applicant for citizenship has to have good moral character. (Doc. # 126, p. 698).  An applicant for becoming a naturalized citizen must go through a process that starts with filling out a N 400 form that is signed under penalty of perjury.  (Doc. # 126, p. 691, 699). The United States Citizenship and Immigration Services relies upon applicant to tell the truth on these forms.  (Doc. # 126, p. 700).

There are several disqualifying questions asked on the N 400 form that if the applicant answers "yes," they are not eligible for citizenship.  (Doc. # 126, p. 710). The form asks, "Have you ever persecuted, either directly or indirectly, any person because of race, religion, national origin, membership in a particular social group, or political opinion?" (Doc. # 126, p. 709).

The N 400 provides the instructions for answering the questions as follows: "For the purposes of this application, you must answer yes to the following questions if applicable, even if your records were sealed or otherwise cleared or if anyone,

including a judge, law enforcement officer, or attorney, told you that you no longer have a record." (Doc. # 126, p. 711).  The form then asks several related questions:

> 15 Have you ever committed a crime or offense for which you were not arrested?
> 16 Have you ever been arrested, cited or detained by any law enforcement officer, including USCIS or former INS and military officers for any reason?
> 17 Have you ever been charged with committing any crime or offense?
> 18 Have you ever been convicted of a crime or offense?

(Doc. # 126, p. 711).  Traffic and other minor offenses are not disqualifying but more serious crimes would be.  (Doc. # 126, p. 712, 716).  It is USCIS's position that an applicant must make such a disclosure even if the crime or arrest was the result of coercion or duress.  (Doc. # 126, p. 713). In a different section of the form questions are asked about lying to immigration officials.

> 23 Have you ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?
> 24 Have you ever lied to any U.S. government official to gain entry or admission into the United States?

(Doc. # 126, p. 714).  Any positive answer to these questions is disqualifying as lying is inconsistent with good moral character.  (Doc. # 126, p. 715).

Mr. Belayneh answered no to these questions.  (Doc. # 126, pp. 750-752).  On March 19, 2008, Mr. Belayneh was interviewed as part of the immigration process and affirmed the answers on his N-400 form.  (Doc. # 126 p. 754-756).  His

3

application was approved that same day. (Doc. # 126 p. 756).  Mr. Belayneh was sworn in as an American citizen on July 18, 2008 and again reaffirmed his answers previously given.  (Doc. # 126 p. 759-761).

In 1974 Emperor Hallie Selassie lost power in Ethiopia to the Derg, a group of military officers that overthrew the government and ran Ethiopia for many years. (Doc. # 124, p. 444-447). The opposition to the Derg was a group known as the Ethiopian People's Revolutionary Party (hereinafter "EPRP") or "Ihapa" in Amharic.  (Doc. #. 125, p. 498).   The EPRP were mostly young people or students. (Doc. # 125, p. 499).  The Derg turned violent against the EPRP from 1976 through 1978 in a period that became known as the Red Terror.  (Doc. # 125, p. 500).

In the small town of Dilla, Ethiopia, groups of militia would arrest students who were members of EPRP or suspected members and imprison them.  (Doc. # 125, p. 502-503; 585).  They were taken to Menafesha prison which used to be a hotel before the Red Terror.  (Doc. # 125, p. 505; Doc. # 127,  p. 857; 925).  They were not told why they were arrested or how long they would be detained.  (Doc. # 125, p. 506; 616; Doc. # 127 p. 936-937).  They did not see a judge or have a lawyer. (Doc. # 125, p. 506; 616; Doc. # 127,  p. 862; 936).  The young people were brought to an interrogation room and were brutally beaten and tortured.  (Doc. # 125, p. 506; 599-603; Doc. # 127,  p. 859).  When they were not being interrogated, they were housed in small rooms with several people and no furniture.  (Doc. # 125, p. 506;

594; Doc. # 127,  p. 857; 926-927).  Family could bring them food, but they were not allowed to see or communicate with their families.  (Doc. # 125, p. 508-509, 514; 596-597; Doc. # 127 p. 927).   There was limited opportunity to relieve themselves.  (Doc. # 125, p. 514; 596; Doc. # 127,  p. 857-858; 927 ).

The parties stipulated that a document entitled "Form to be Completed by Asylum-Seekers" was found in a closet of Mr. Belayneh's home. (Doc. # 126, p. 782).   The name and the date of birth were partially crossed out.  (Doc. # 126, p. 782-783). The document says:

> The reasons why I left my home country and came to Kenya. I am a 35 years old Ethiopian born asylum-seeker who crossed the border to Kenya through Moyale on the 10th June 1991. Prior to my arrival to Kenya, I was an officer to the State and Public Security Office of Wonago Province in Sidamo region.
>
> As a result of my active performances of office responsibilities, I was appointed as a chairman to the primary Level Working People's Controlling Committee and permanent member to the regional office. Specially after I was officially appointed as an officer to the State and Public Security Office of Wonago Province on April 1989, my conflicts with these anti-government underground movements get worsen.
>
> Thousands of peoples' militia were recruited by the command of our head committee, which I was the one. Hence, the recruitment was not on basis of voluntarism. There were times when we use power and force. This left us to an open conflict with the recruits, the society and anti-government powers of those days. Hundreds of individuals were arrested by our office to have had

anti-government propaganda, activity or stand. It was me who confirm all such cases.

In so long as I was one among those who participated in the ideological activities of the overthrown government, I was fallen in conflict, contradictions, with ethnic groups, transitional government, the society and individuals in one way or another. To handover myself would mean nothing except future mistreatment, persecution or even hidden assassination. So, in fear of losing my life or persecution after hiding myself for several days, leaving my family and personal property behind, I fled to Kenya.

Former occupations are listed as co-operative organizer, chairman of the Primary Level of Working Peoples' Controlling Committee.

Under Professional and Employment Records, starting with the most recent post, it says, April 1989 to May 1991, State and Public Security officer to Wonago Province. December 1986 to April 1989, chairman to the Primary Level Working Peoples' Controling Committee. And September 1980 to December 1986, Co-operative Organizer in the Regional Office of Housing and Urban Development.

(Doc. # 126, p. 783-785).

Mezemr Abebe Belayneh appeared to be in charge or at least have a leadership role. (Doc. # 125, p. 517, 519; 593; Doc. # 127,  p. 861-862; 922. 931).  He was often seen with a gun.  (Doc. # 125, p. 519, 522; 586; 609). Mr. Belayneh beat the students during the interrogation or ordered militia to beat them. (Doc. # 125, p. 593,

602-603, 608;   The interrogations sought to determine who was a member of EPRP or sympathetic to their cause.  (Doc. # 125, p. 510; 602; Doc. # 127, p. 929).

Mr. Belayneh testified on his own behalf at trial.  (Doc. # 128, p. 1008).  He denied that he was a member of the Derg and recounted a violent encounter he experienced at the hands of EPRP supporters.  (Doc. # 128, p. 1015-1017).  One morning the militia showed up at his shop and demanded that he go with them.  (Doc. # 128, p. 1018).   He was afraid that if he did not go with them, he would be shot.  (Doc. # 128, p. 1019). He thought about running but there were check points in every direction.  (Doc. # 128, p. 1020).  He was brought into the interrogation room where two sergeants  instructed him to interrogate the detainee students.  (Doc. # 128, p. 1025-1027).  He did what he did because he felt like he could not resist, or he would be beaten or killed.  (Doc. # 128, p. 1030).  He answered the way that he did on the N 400 forms because he did not believe that he had committed a crime, his understanding of English was insufficient, and he wanted to erase what happened at Menafesha from his memory.  (Doc. # 128, p. 1046-1049).

Additional facts will be incorporated as needed.

(iii) <u>Standard of Review</u>:

This Court will review the district court's denial of a motion to dismiss an indictment for abuse of discretion, but the interpretation and application of a statute

of limitations is a legal question that we review de novo. *United States v. Rojas*, 718 F.3d 1317 (11th Cir. 2013); *United States v. Torres*, 318 F.3d 1058, 1061 n. 6 (11th Cir.2003). The interpretation of a criminal statute is a question of law that we also review de novo. *United States v. Murrell*, 368 F.3d 1283, 1285 (11th Cir.2004).

## SUMMARY OF ARGUMENT

The district court abused its discretion in failing to grant Mr. Belayneh's motion to dismiss based upon statute of limitation grounds.  It is undisputed that there was a ten-year statute of limitations in place and that the indictment was filed after the statute had expired.  18 U.S.C. § 3292 allows the Government to make an application to the district court where a grand jury is impaneled to investigate the offense.  The district court relied upon this Court's decision in *United States  v. Broughton*, 689 F.3d 1260 (11th Cir. 2012) to that effectively ignore the plain language of the statute's requirements.  Cannons of statutory construction require courts not to ignore the plain language of the statute or render parts of the statute surplusage.  This was the error of the district court.

## ARGUMENT AND CITATION OF AUTHORITY

II.   THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO GRANT MR. BELAYNEH'S MOTION TO DISMISS BASED UPON THE STATUTE OF LIMITATIONS

The District Court abused its discretion by failing to grant Mr. Belayneh's motion to dismiss based upon the statute of limitations. Violations of 18 U.S.C. § 1425(a) and (b) carry a ten-year statute of limitations. 18 U.S.C. § 3291. Under 18 U.S.C. § 3292, the running of a statute of limitation may be suspended if the Government applies to the district court before which a grand jury is impaneled to investigate the offense and the court finds that an official request has been made for evidence of an offense is in a foreign country and that such evidence is in a foreign country.  This case comes before the Court because the district court abused its discretion in failing to grant Mr. Belayneh's motion to dismiss.

In 2001, Belayneh filled out an application for immigrant visa and alien registration. (Doc. # 126, p. 745; Doc. # 29-10). Belayneh was granted status as a lawful permanent resident. (Doc. # 126, p. 745).

In 2007, Belayneh applied for naturalized citizenship. (Doc. # 126, p. 746). On March 19, 2008, Belayneh was interviewed in support of his application for naturalized citizenship.  (Doc. # 126, p. 752-753).

On July 18, 2008, Belayneh was admitted as a citizen of the United States of America. (Doc. # 126, p. 758-761; Doc. # 29-3).

On June 11, 2018, the United States Department of Homeland Security opened a case on Belayneh related to potential human rights violations committed in Ethiopia during the mid to late 1970's. (Doc. # 29-4).  On July 13, 2018, the Government filed an *Ex Parte In Camera* application under 18 U.S.C. § 3292 seeking to suspend the running of the statute of limitations.  (Doc. # 29-7).  Without this application the statute of limitations would have expired five days later on July 18, 2018. 18 U.S.C. § 3291.

The Honorable Mark H. Cohen, District Judge, granted the government's application, and suspended the running of the statute of limitations beginning July 2, 2018.  (Doc. # 29-8)(signing the order July 13, 2018, "*nunc pro tunc* to July 2, 2018").

On April 30, 2019, the government filed a supplemental *Ex Parte In Camera* application requesting that the suspension of the statute of limitations previously granted encompass a request for evidence from the Republic of Kenya (Kenya), as well as a second request for evidence from Ethiopia. (Doc. # 29-9 at 1-3, 24-26). On April 30, 2019, Judge Cohen granted the government's supplemental application "for evidence it reasonably appears is located in those countries relevant to a pending grand jury investigation of [Defendant] involving a possible violation of 18 U.S.C. §1425." (Doc. # 29-10 at 1-2).

On March 31, 2021, the government filed a second supplemental *Ex Parte In Camera* application under 18 U.S.C. §3292, stating that on March 18, 2021, OIA received a response from Ethiopia to its original request for evidence, consisting of 82 pages of documents in the Amharic language, but that the response did not appear complete. (Doc. # 29-11 at 3-4, 9-11). The government had not yet received the evidence sought in the request to Kenya, or in the supplemental request to Ethiopia. (Doc. 29-11 at 3, 9-11). The government requested that the suspension of the statute of limitations no later than July 2, 2021. (Doc. # 29-11 at 6-7).

On March 31, 2021, the Honorable Timothy C. Batten, District Judge, granted the government's second supplemental application "for evidence that reasonably appears to be located there relevant to a pending grand jury investigation of [Defendant] involving possible violations of 18 U.S.C. §1425." (Doc. # 29-12 at 1-2). Judge Batten ordered that the running of the statute of limitation be suspended no later July 2, 2021. (Doc. # 29-12 at 2).

The federal grand jury returned the indictment on May 26, 2021. (Doc. # 1). In short, if the first application, July 11, 2018, met the criteria of 18 U.S.C. § 3292 then the statute of limitations was suspended, and the May 2021 indictment was timely. Mr. Belayneh submits that the government failed to meet its burden to suspend the statute of limitations as there was no grand jury impaneled to investigate the alleged offenses.

The United States Supreme Court has long held that statutes of limitations "are to be liberally interpreted in favor of repose." *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) (internal quotation marks omitted). "A statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill suited for prosecution." *Smith v. United States*, 568 U.S. 106, 133 S.Ct. 714, 720, 184 L.Ed.2d 570 (2013). "Congress has declared a policy that the statute of limitations should not be extended except as otherwise expressly provided by law." *Toussie*, 397 U.S. at 115, 90 S.Ct. at 860 (alteration and internal quotation marks omitted).

As this Court well knows, the starting point for statutory interpretation purposes "is the language of the statute itself" to "determine whether its meaning is clear." *United States v. Zuniga–Arteaga*, 681 F.3d 1220, 1223 (11th Cir.2012); *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir.2002) (*en banc*)). "Indeed, '[i]n construing a statute we must begin, and often should end as well, with the language of the statute itself.' " *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc).

This Court has previously reviewed the language of 18 U.S.C. § 3292 and held that

> A plain reading of § 3292 demonstrates that a district court's decision to suspend the running of a statute of limitations is limited to two considerations: 1) whether an official request was made; and 2) whether that official request was made for evidence that reasonably appears to be in the country to which the request was made. Id. If both those considerations are met, the statute of limitations "shall" be suspended.

*United States v. Broughton*, 689 F.3d 1260, 1273 (11th Cir. 2012). The District Court relied upon that decision in denying Mr. Belayneh's motion to dismiss. (Doc. # 60, p. 9). Mr. Belayneh must acknowledge that if all that is required to suspend the statute of limitations under 18 U.S.C. § 3292 are the two considerations set forth in *Broughton* then those requirements were met.

Mr. Belayneh submits there is more to § 3292 than the holding in *Broughton*. The plain language of 18 U.S.C. § 3292(a) provides:

> (a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, **the district court before which a grand jury is impaneled to investigate the offense** shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

(Emphasis added).

13

Mr. Belayneh submits that the plain language of  18 U.S.C. § 3292 requires that the application be filed in "**the district court before which a grand jury is impaneled to investigate the offense.**"  Because there was no information that a grand jury was impaneled in the July 13, 2018, *Ex Parte In Camera* application filed by the Government, it failed to meet the plain language requirements of the statute. Mr. Belayneh submits that the language "grand jury is impaneled to investigate the offense," was ignored by the district court because it followed this Court's decision in *Broughton*.  When this Court considers the language of a statute it does not look at one work or phrase in isolation but considers the statutory scheme for clarification and context.  *United States v. McLemore*, 28 F.3d 1160, 1162 (11th Cir. 1994).   The district court's reading of the statute renders the grand jury language mere surplusage which should be avoided.  "It is a basic tenet of statutory construction that courts should refrain from construing a statutory provision in a way that renders meaningless another provision within the same statute." *United States v. Phipps*, 81 F.3d 1056 (11th Cir. 1996); *Ratzlaf v. United States*, 510 U.S.135, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994)(Judges should hesitate so to treat statutory terms in any setting as surplusage); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U. S. 552, 562 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (expressing "deep reluctance" to interpret statutory provisions "so as to render superfluous other provisions in the same enactment") (citation omitted); *Potter v. United States*, 155

U. S. 438, 446 15 S.Ct. 144, 39 L.Ed. 214 (1894) (word "willful" used to describe certain offenses but not others in same statute "cannot be regarded as mere surplusage; it means something").

In order for the application to have complied with the statute the Government was required to inform the district court that there was a grand jury impaneled to investigate the offense.  The grand jury language is not surplusage.  *DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal*, 219 F.3d 930, 939-940 (9th Cir. 2000) (interpreting the grand jury clause in § 3292 (a) (1) and holding that the active interpretation was reasonable and stating that the district court was faced with "a difficult statutory interpretation question."); see also *United States v. Neill*, 952 F. Supp. 2d 831, 833 (D. D.C. 1996) ("The government can only request that the statute of limitations be tolled for offenses under investigation by the grand jury[.]"); *United States v. Jenkins*, 633 F.3d 788, 793-94, 797 (9th Cir. 2011) ("Section 3292 permits the district court to suspend the statute upon finding that the government reasonably believes *evidence of a crime under investigation by a grand jury* is in a foreign country and has requested that evidence.") (emphasis added).

Because the  July 13, 2018 application did not comply with the plain statutory language of 18 U.S.C. § 3292 the statute of limitations continued to run.  In this case that meant that the statute of limitations ran for these offenses on July 18, 2018.  It also means that the April 30, 2019, supplemental *Ex Parte In Camera* application

did not suspend the statute of limitations because it had already run. *Stogner v. California*, 539 U.S. 607, 123 S. Ct. 2446 (2003). Accordingly, Mr. Belayneh submits that the district court abused its discretion by failing to grant Mr. Belayneh's motion to dismiss. Accordingly, his convictions and sentences should be set aside.

<u>Conclusion</u>

Mr. Belayneh submits that since the government failed to comply with the plain language of 18 U.S.C. § 3292 by not informing the district court that there was a grand jury impaneled to investigate the case that application did not toll or suspend the statute of limitations which ran out five days later. For all of the foregoing reasons Mezemr Abebe Belayneh asks this Court to set aside his convictions and sentences.

Respectfully submitted this 29th day of July, 2024.

Respectfully submitted,

/S/ *Adam M. Hames*
ADAM M. HAMES
Georgia State Bar Number: 320498
The Hames Law Firm, LLC

16

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing Brief of

Appellant upon:

> Tal C. Chaiken, A.U.S.A.
> Lawrence Sommerfeld, A.U.S.A.
> United States Attorney's Office
> 75 Spring Street S.W.
> Suite 600
> Atlanta, Georgia 30303

by depositing a copy of the same in the United States mail with proper postage

affixed thereto to ensure delivery of the same and through the electronic filing

system of this Court.

Respectfully submitted this 29th day of July, 2024.

> /S/ *Adam M. Hames*  
> ADAM M. HAMES
> Georgia State Bar Number: 320498
> The Hames Law Firm, LLC
> 511 East Paces Ferry Road, N.E.
> Atlanta, GA 30305
> (404) 842-9577

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed.R.App.P.

32(a)(7)(B) because this brief contains 4,040 words, excluding the parts of the

brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii)

2.     This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5)

and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has

been prepared in a proportionally spaced typeface using Microsoft Word in 12

point Courier New.

Respectfully submitted this 29th day of July, 2024.

/s/ *Adam M. Hames* _____
ADAM M. HAMES
Georgia State Bar Number: 320498
The Hames Law Firm, LLC
511 East Paces Ferry Road, N.E.
Atlanta, GA 30305
(404) 842-9577
Attorney for Mezemr Abebe Belayneh